UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

**11 CIV 5891**

WESTLEY B. ARTOPE,

Civil Action No:

                  Plaintiff,

COMPLAINT AND JURY DEMAND

   -against-

PAUL BLUHDORN and PAIGE
BLUHDORN,

                  Defendants.
-----------------------------------------------------X

## INTRODUCTION

1. Plaintiff alleges that Defendants violated the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, to pay him overtime premium pay for all hours worked in excess of forty per week, and that Defendants acted in a manner that was willful and without good faith.

2. Plaintiff further alleges that Defendants' failure to pay compensation for all hours worked was made with a reckless disregard for Plaintiff's rights and in violation of the New York Labor Law ("NYLL") sections 650 *et seq.*, including Part 142, section 142-2.2 ("Overtime Rate") and section 142-2.4 ("Spread of Hours Pay") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the New York State Labor Law).

3. Additionally, Plaintiff alleges that the Defendants violated the New York State Executive Law section 290 et seq. by discriminating against him in the terms, conditions, and privileges of his employment on the basis of his sex.

## JURISDICTION AND VENUE

4. This Court's jurisdiction is based upon 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (Federal Question). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over

Plaintiff's state law claims because those derive from a common nucleus of operative facts. In addition, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is appropriate under 28 U.S.C. § 1391(b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district. In addition, Defendants regularly conduct business in this district and are subject to personal jurisdiction in this district.

PARTIES

5. Plaintiff Westley B. Artope is a resident of Cortlandt Manor, New York. He was employed as an animal trainer by the Defendants from September 19, 2008 until July 20, 2009.

6. The Defendant, Paul Bluhdorn, is an individual residing in Bedford Hills, New York.

7. The Defendant, Paige Bluhdorn, is an individual residing in Bedford Hills, New York.

FACTS

8. Plaintiff's primary job duties were to act as the animal trainer for the Defendants' dogs. Plaintiff also performed other duties that were designated by the Defendants from time to time at the Bluhdorn Estate located in Bedford Hills, New York.

9. Plaintiff's primary duties never consisted of performing office or managerial work directly related to Defendants' management policies or general business operations. Nor has his primary duties included work requiring the exercise of discretion or independent judgment with respect to matters of significance.

10. Plaintiff never regularly supervised or directed the work of two or more full-time employees or their equivalent. Plaintiff never had any responsibility for managing any department or subdivision of Defendants' business. And, Plaintiff's duties never required

knowledge of an advanced type in a field of service or learning customarily acquired by a prolonged course of specialized intellectual instruction and study.

11. Plaintiff regularly worked 75 hours per week.

12. Plaintiff was not exempt from the overtime provisions of the FLSA or any applicable state laws.

13. Defendants were aware of Plaintiff's work hours, but failed to pay Plaintiff the full amount of wages to which he was entitled for this work time under the law.

14. Plaintiff never received overtime compensation, but instead received a predetermined salary amount no matter how many hours he worked in any given day, week, month, or year.

15. Plaintiff repeatedly complained to Defendants about the failure to pay proper wages. Despite these complaints, Defendants nevertheless repeatedly continued in their failure to pay Plaintiff all of the wages due to him under the law.

16. Defendants' failures to pay proper wages in a timely manner were made without good faith, willfully, and with a reckless disregard for Plaintiff's rights; and Plaintiff has been damaged by such failures.

17. During the course of his employment, throughout his numerous regular and overtime working hours, Plaintiff conferred a measurable benefit upon Defendants.

18. During the course of his employment, the Plaintiff was sexually harassed by the Defendant, Paige Bluhdorn.

19. During the time period of October, 2008 to February 18, 2009, Paige Bluhdorn would call the Plaintiff into her bedroom to assign the Plaintiff work related tasks.

20. During these encounters, Paige Bluhdorn would be dressed in shorts and a tee shirt.

21. The Plaintiff informed Paige Bluhdorn that these encounters made him uncomfortable, but she did not stop initiating them.

3

22. On February 18, 2009, Paige Bluhdorn asked the Plaintiff to accompany her to one of her properties to locate documents that she needed for a trip.

23. During the car ride, Paige Bluhdorn told the Plaintiff that she was having marital problems and informed the Plaintiff that her husband was sexually inept.

24. During the car ride, Paige Bluhdorn told the Plaintiff that she was attracted to him and wanted to engage in a sexual relationship with him.

25. When the Plaintiff told Paige Bluhdorn that he was happily married with children, Paige Bluhdorn responded that she was married also and that was no reason not to become intimately involved.

26. Paige Bluhdorn then placed her hand on the Plaintiff's hand, but the Plaintiff turned down Paige Bluhdorn's sexual advances.

27. After the Plaintiff turned down Paige Bluhdorn's sexual advances, Paige Bluhdorn treated the Plaintiff differently and created a hostile work environment.

28. Paige Bluhdorn often criticized the Plaintiff's work and suddenly found fault in tasks that the Plaintiff previously performed without issue.

29. Paige Bluhdorn suddenly became dissatisfied with the Plaintiff's work.

30. After the Plaintiff turned down Paige Bluhdorn's sexual advances, the Plaintiff found it difficult to communicate with her.

31. After the Plaintiff turned down Paige Bluhdorn's sexual advances, Paige Bluhdorn would speak to the Plaintiff in a disrespectful and hostile manner and often yell at him.

32. On July 10, 2009, Paige Bluhdorn told the Plaintiff that she no longer wanted to see him in the house.

33. This made the Plaintiff's job extremely difficult, as the Plaintiff could only enter the house if Paige Bluhdorn was not present.

4

34. On July 20, 2009, the Plaintiff submitted a written complaint to his supervisor, Jamie Poole.

35. In the written complaint, the Plaintiff complained about being sexually propositioned by Paige Bluhdorn and her subsequent treatment of him after the Plaintiff turned down her sexual advances.

36. That same day, July 20, 2009, the Plaintiff was terminated.

COUNT I
(FLSA Overtime Claim)

37. At all times relevant to this Complaint, Defendants have been and continue to be, an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

38. At all times relevant to this Complaint, Defendants have "employed" Plaintiff suffering or permitting him to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

39. At all times relevant to this Complaint, Defendants were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA (29 U.S.C. § 203(s)).

40. Defendants' failures to pay overtime wages to Plaintiff for such work violates the FLSA (29 U.S.C. § 207).

41. Defendants' failures to provide required compensation for all hours worked by Plaintiff are willful violations within the meaning of FLSA (29 U.S.C. § 255(a)).

42. Defendants' repeated and intentional failures to provide required compensation for all hours worked by Plaintiff were not made in good faith within the meaning of the FLSA (29 U.S.C. § 260).

43. As a result of Defendants' violations of the FSLA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (NYLL Overtime Claim)

44. At all times relevant to this Complaint, Defendants were an "employer" of Plaintiff within the meaning of the NYLL and the regulations pertaining thereto.

45. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the NYLL and the regulations pertaining thereto.

46. At all times relevant to this Complaint, Defendants employed Plaintiff suffering or permitting him to work within the meaning of NYLL and the regulations pertaining thereto.

47. Defendants failed to pay overtime premiums to Plaintiff for all such work hours in excess of 40 hours per workweek, in violation of the NYLL and the regulations pertaining thereto.

48. Such failures constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

49. As a result of Defendants' violation of the NYLL and the regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT III
### (Spread of Hours)

50. That the Plaintiff worked shifts of more than ten hours for many workdays during his employment.

51. That the Defendants never paid spread of hours pay to the Plaintiff as required under Part 142, section 142-2.4 ("Spread of Hours Pay") of Title 12 of the Official Compilation of

6

Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the

Minimum Wage Act (Article 19 of the New York State Labor Law).

52. Such failures constituted outrageous conduct, made knowingly and willfully, or with

a reckless indifference to plaintiff's rights.

53. As a result of Defendants' violation of the NYLL and the regulations promulgated

therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with

liquidated damages, attorneys' fees and costs of litigation.

## COUNT IV
### (New York Executive Law Section 296)

54. The Defendants violated the New York State Executive Law section 290 et seq. by

discriminating against the Plaintiff in the terms, conditions, and privileges of his employment on

the basis of his sex.

55. The Defendants violated the New York State Executive Law section 290 et seq. by

terminating the Plaintiff the same day that he submitted a written complaint complaining about

Paige Bluhdorn's sexual harassment of him.

56. That as a result of the Defendants' violation of the New York State Executive Law

section 290 et seq., the Plaintiff has sustained lost wages, salary, and employment benefits.

57. That the Plaintiff additionally seeks interest, liquidated damages, costs, and attorney's

fees.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on his claims.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Determine the damages sustained by Plaintiff as a result of Defendants' violations of 29 U.S.C. §207, and award those damages against Defendants and in favor of Plaintiff, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), plus such pre-judgment and post-judgment interest as may be allowed by law;

(B) Determine the damages sustained by Plaintiff as a result of Defendants' violations of the NYLL and the regulations pertaining thereto, and award those damages against Defendants and in favor of Plaintiff, and liquidated damages, such pre-judgment and post-judgment interest as may be allowed by law; as well as restitution;

(C) Award Plaintiff costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees.

(D) Declaring the Defendants' conduct to be in violation of the Plaintiff's rights under the New York Executive Law section 290 et seq.

(E) Awarding the Plaintiff back pay, front pay, pre-judgment interest, lost fringe benefits, compensatory damages, liquidated damages, costs, and attorney's fees.

(F) Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Westbury, New York
August 16, 2011

Neil H. Greenberg & Associates, P.C.
By: Neil H. Greenberg, Esq. (NG 1307)
Attorneys for the Plaintiff
900 Merchants Concourse, Suite 314
Westbury, New York 11590
(516) 228-5100

8