UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WESTLEY B. ARTOPE,                              11 CV 5891 (CS) (GAY)

                   Plaintiff,                           AMENDED COMPLAINT
                                               AND JURY DEMAND

  -against-

PAUL BLUHDORN and PAIGE
BLUHDORN,

                   Defendants.
------------------------------------------------------X



## INTRODUCTION

1. Plaintiff alleges that Defendants violated the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, to pay him overtime premium pay for all hours worked in excess of forty per week, and that Defendants acted in a manner that was willful and without good faith.

2. Plaintiff further alleges that Defendants' failure to pay compensation for all hours worked was made with a reckless disregard for Plaintiff's rights and in violation of the New York Labor Law ("NYLL") sections 650 *et seq.*, including Part 142, section 142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the New York State Labor Law).

3. Additionally, Plaintiff alleges that the Defendants violated the New York State Executive Law section 290 et seq. by discriminating against him in the terms, conditions, and privileges of his employment on the basis of his sex.

## JURISDICTION AND VENUE

4. This Court's jurisdiction is based upon 29 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (Federal Question). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over

Plaintiff's state law claims because those derive from a common nucleus of operative facts. In addition, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is appropriate under 28 U.S.C. § 1391(b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district. In addition, Defendants regularly conduct business in this district and are subject to personal jurisdiction in this district.

## PARTIES

6. Plaintiff Westley B. Artope is a resident of Cortlandt Manor, New York.

7. Upon information and belief, the Defendant, Paul Bluhdorn, is an individual residing in Bedford Hills, New York.

8. Upon information and belief, the Defendant, Paige Bluhdorn, is an individual residing in Mount Kisco, New York.

9. Upon information and belief, during the time period September 19, 2008 through July 20, 2009, Paige Bluhdorn resided at the Bluhdorn Estate in Bedford Hills, New York.

10. Upon information and belief, during the time period September 19, 2008 through July 20, 2009, Paul Bluhdorn and Paige Bluhdorn were husband and wife.

11. Upon information and belief, during the time period September 19, 2008 through July 20, 2009, Paul Bluhdorn and Paige Bluhdorn lived at the Bluhdorn Estate in Bedford Hills, New York.

12. Upon information and belief, Paul Bluhdorn and Paige Bluhdorn are currently parties to a contested matrimonial action bearing Westchester County Supreme Court Index Number 001863/12.

## FACTS

13. The plaintiff was employed as an animal trainer by Paul Bluhdorn and Paige Bluhdorn from September 19, 2008 until July 20, 2009.

14. On or about September 19, 2008, Paul Bluhdorn hired the plaintiff to work at the Bluhdorn Estate as an animal trainer.

15. On or about September 19, 2008, Paige Bluhdorn hired the plaintiff to work at the Bluhdorn Estate as an animal trainer.

16. On or about September 19, 2008, Paul Bluhdorn set the plaintiff's salary at $300.00 a day no matter how many hours he worked in any given day, week, month, or year.

17. On or about September 19, 2008, Paige Bluhdorn set the plaintiff's salary at $300.00 a day no matter how many hours he worked in any given day, week, month or year.

18. On or about September 19, 2008, the plaintiff was given his job duties by Paul Bluhdorn.

19. On or about September 19, 2008, the plaintiff was given his job duties by Paige Bluhdorn.

20. Plaintiff's primary job duties were to act as the animal trainer for the Defendants' dogs.

21. Plaintiff also performed other duties that were designated by Paul Bluhdorn from time to time at the Bluhdorn Estate located in Bedford Hills, New York.

22. Plaintiff also performed other duties that were designated by Paige Bluhdorn from time to time at the Bluhdorn Estate located in Bedford Hills, New York.

23. On or about October 30, 2008, Paul Bluhdorn gave the plaintiff additional job duties and responsibilities.

24. On or about October 30, 2008, Paige Bluhdorn gave the plaintiff additional job duties and responsibilities.

25. Plaintiff's primary duties never consisted of performing office or managerial work directly related to Defendants' management policies or general business operations.

26. Plaintiff's primary duties never included work requiring the exercise of discretion or independent judgment with respect to matters of significance.

27. Plaintiff never regularly supervised or directed the work of two or more full-time employees or their equivalent.

28. Plaintiff never had any responsibility for managing any department or subdivision of Defendants' business.

29. Plaintiff's duties never required knowledge of an advanced type in a field of service or learning customarily acquired by a prolonged course of specialized intellectual instruction and study.

30. Plaintiff regularly worked 75 hours per week.

31. The additional job duties given to the plaintiff by Paul Bluhdorn required the plaintiff to work the hours of 7 a.m. to 5 p.m. and 8 p.m. and 11 p.m. during each day for six days a week.

32. The additional job duties given to the plaintiff by Paige Bluhdorn required the plaintiff to work the hours of 7 a.m. to 5 p.m. and 8 p.m. and 11 p.m. during each day for six days a week.

33. Plaintiff was not exempt from the overtime provisions of the FLSA or any applicable state laws.

34. Defendants were aware of Plaintiff's work hours, but failed to pay Plaintiff the full amount of wages to which he was entitled for this work time under the law.

35. Plaintiff never received overtime compensation, but instead received a predetermined salary amount no matter how many hours he worked in any given day, week, month, or year.

36. Defendants' failures to pay proper wages in a timely manner were made without good faith, willfully, and with a reckless disregard for Plaintiff's rights; and Plaintiff has been damaged by such failures.

37. During the course of his employment, Paul Bluhdorn regularly directed the plaintiff in the manner in which he was required to carry out his job duties and responsibilities.

38. During the course of his employment, Paige Bluhdorn directed the plaintiff to perform tasks around the Bluhdorn Estate.

39. Paige Bluhdorn directed the plaintiff to run errands to the pharmacy, post office, hardware store, grocery store, and the dry cleaning store.

40. Paige Bluhdorn directed the plaintiff to perform grounds work such as cleaning the courtyards, patios, and pool areas.

41. Paige Bluhdorn directed the plaintiff to cook her breakfast and lunch and to clean the kitchen afterwards.

42. Paige Bluhdorn directed the plaintiff to set up for parties at the Bluhdorn Estate and to decorate the outside of the Bluhdorn Estate for holidays.

43. Paige Bluhdorn directed the plaintiff to pick up the mail and newspapers to bring into the house.

44. Paige Bluhdorn directed the plaintiff to drive her into Manhattan.

45. Paige Bluhdorn directed the plaintiff to pick up her children from school.

46. Paige Bluhdorn directed the plaintiff to set up a birthday party for her children.

47. During the course of his employment, Paige Bluhdorn used her control over the Plaintiff to sexually harass him.

48. During the time period of October, 2008 to February 18, 2009, Paige called the Plaintiff into her bedroom to assign the Plaintiff work related tasks.

49. During these encounters, Paige Bluhdorn was dressed in shorts and a tee shirt.

50. The Plaintiff informed Paige Bluhdorn that these encounters made him uncomfortable, but she did not stop initiating them.

51. On February 18, 2009, Paige Bluhdorn told the Plaintiff to accompany her to one of her properties to locate documents that she needed for a trip.

52. During the car ride, Paige Bluhdorn told the Plaintiff that she was having marital problems and informed the Plaintiff that her husband was sexually inept.

53. During the car ride, Paige Bluhdorn told the Plaintiff that she was attracted to him and wanted to engage in a sexual relationship with him.

54. When the Plaintiff told Paige Bluhdorn that he was happily married with children, Paige Bluhdorn responded that she was married also and that was no reason not to become intimately involved.

55. Paige Bluhdorn then placed her hand on the Plaintiff's hand, but the Plaintiff turned down Paige Bluhdorn's sexual advances.

56. After the Plaintiff turned down Paige Bluhdorn's sexual advances, Paige Bluhdorn used her power over the Plaintiff to treat him differently and create a hostile work environment.

57. Paige Bluhdorn often criticized the Plaintiff's work and suddenly found fault in tasks that the Plaintiff previously performed without issue.

58. Paige Bluhdorn suddenly became dissatisfied with the Plaintiff's work.

59. After the Plaintiff turned down Paige Bluhdorn's sexual advances, the Plaintiff found it difficult to communicate with her.

60. After the Plaintiff turned down Paige Bluhdorn's sexual advances, Paige Bluhdorn spoke to the Plaintiff in a disrespectful and hostile manner and often yelled at him.

61. On July 10, 2009, Paige Bluhdorn told the Plaintiff that she no longer wanted to see him in the house.

62. This made the Plaintiff's job extremely difficult, as the Plaintiff could only enter the house if Paige Bluhdorn was not present.

63. On July 20, 2009, the Plaintiff submitted a written complaint to his supervisor, Jamie Poole.

64. In the written complaint, the Plaintiff complained about being sexually propositioned by Paige Bluhdorn and her subsequent treatment of him after the Plaintiff turned down her sexual advances.

65. That same day, July 20, 2009, the Plaintiff was terminated.

66. On July 20, 2009, the Plaintiff was terminated by Paul Bluhdorn.

67. On July 20, 2009, the Plaintiff was terminated by Paige Bluhdorn.

## COUNT I
### (FLSA Overtime Claim)

68. At all times relevant to this Complaint, Defendants have been and continue to be, an "employer" within the meaning of the FLSA.

69. At all times relevant to this Complaint, Defendants have "employed" Plaintiff suffering or permitting him to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

70. At all times relevant to this Complaint, Defendants were an "enterprise engaged in

commerce or in the production of goods for commerce" within the meaning of the FLSA (29 U.S.C. § 203(s)).

71. Upon information and belief, the gross annual volume of sales made or business done by the defendants during the years 2008 and 2009 was not less than $500,000.00 each year.

72. Defendants' failures to pay overtime wages to Plaintiff for such work violates the FLSA (29 U.S.C. § 207).

73. Defendants' failures to provide required compensation for all hours worked by Plaintiff are willful violations within the meaning of FLSA (29 U.S.C. § 255(a)).

74. Defendants' repeated and intentional failures to provide required compensation for all hours worked by Plaintiff were not made in good faith within the meaning of the FLSA (29 U.S.C. § 260).

75. As a result of Defendants' violations of the FSLA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (NYLL Overtime Claim)

76. At all times relevant to this Complaint, Defendants were an "employer" of Plaintiff within the meaning of the NYLL and the regulations pertaining thereto.

77. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the NYLL and the regulations pertaining thereto.

78. At all times relevant to this Complaint, Defendants employed Plaintiff suffering or permitting him to work within the meaning of NYLL and the regulations pertaining thereto.

79. Defendants failed to pay overtime premiums to Plaintiff for all such work hours in

excess of 40 hours per workweek, in violation of the NYLL and the regulations pertaining thereto.

80. Such failures constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

81. As a result of Defendants' violation of the NYLL and the regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT III
### (New York Executive Law Section 296)

82. The Defendants violated the New York State Executive Law section 290 et seq. by discriminating against the Plaintiff in the terms, conditions, and privileges of his employment on the basis of his sex.

83. The Defendants violated the New York State Executive Law section 290 et seq. by terminating the Plaintiff the same day that he submitted a written complaint complaining about Paige Bluhdorn's sexual harassment of him.

84. That as a result of the Defendants' violation of the New York State Executive Law section 290 et seq., the Plaintiff has sustained lost wages, salary, and employment benefits.

85. That the Plaintiff additionally seeks interest, liquidated damages, costs, and attorney's fees.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on his claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Determine the damages sustained by Plaintiff as a result of Defendants' violations of 29 U.S.C. §207, and award those damages against Defendants and in favor of Plaintiff, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b);

(B) Determine the damages sustained by Plaintiff as a result of Defendants' violations of the NYLL and the regulations pertaining thereto, and award those damages against Defendants and in favor of Plaintiff, and liquidated damages, such pre-judgment and post-judgment interest as may be allowed by law; as well as restitution;

(C) Award Plaintiff costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees.

(D) Declaring the Defendants' conduct to be in violation of the Plaintiff's rights under the New York Executive Law section 290 et seq.

(E) Awarding the Plaintiff back pay, front pay, pre-judgment interest, lost fringe benefits, compensatory damages, liquidated damages, costs, and attorney's fees.

(F) Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Westbury, New York  
April 10, 2012

Neil H. Greenberg & Associates, P.C.  
By: Neil H. Greenberg, Esq. (NG 1307)  
Attorneys for the Plaintiff  
900 Merchants Concourse, Suite 314  
Westbury, New York 11590  
(516) 228-5100